JOSEPH M. MICHEL, APPELLANT, vs. JOHN S. SAMMIS, APPELLEE.

An original bill, filed for the purpose of enjoining the execution of a decree of foreclosure of a mortgage upon the ground that a defence existed of which the defendant neglected to avail himself, or which may have been denied by the court, cannot be sustained.

Appeal from Duval Circuit Court, Fourth Judicial Circuit.

·The opinion of the court contains a statement of the case.

*Ives & Dawkins* for Appellant.

The principal questions to be determined in this case are:

1. What constitutes a homestead?

2. Whether a mortgage given for any purpose other than those embraced within the exceptions mentioned in the constitutional exemptions constitutes a valid lien upon a homestead?

3. What is necessary to be done by a party to be entitled to the benefit of a homestead?

4. Can a homestead, exempted from forced sale by the Constitution of this State, be sold under a decree of foreclosure, except for the payment of obligations contracted for the purchase of the premises, or for the erection of improvements thereon, or for labor performed on the same?

5. Do the homestead exemptions in this State impair the obligation of contracts?

Mr. Bouvier defines the homestead to be the place of the house, or home place. (Bou. L. Dic. Vol. 1, p. 670.)

A homestead is a house used as a home, together with the prescribed quantity of land on which the house is situated. The word *home* is to have its ordinary and usual signification. * * Homestead means the home place. (Richardson, C. J., in 7 N. H. 245; Ib. 483.)

The homestead is the dwelling place of the family, where they permanently reside. (Cook vs. McChristian, 4 Cal., 26.)

It may be laid down as a general rule that the premises do not become impressed with the legal character of a homestead until actual residence and occupation by the family as a home. (Holden vs. Phinney, 6 Cal., 236, 625; Norris vs. Moulton, 34 N. H., 392; Meyer vs. Claus, 15 Texas, 516; Wisner vs. Farnham, 2 Mich., 472; Benedict vs. Bunnell, 7 Cal., 245.)

Every State may exempt any property it thinks proper from sale for the payment of a debt, and may impose such

conditions and restrictions upon the creditor as its judgment and policy may dictate, and all future contracts must be subject to such provisions. (Bronson vs. Kinsie et al., 1 How. 321.)

In Garret vs. Cheshire, Mr. Justice Reed, after referring to various decisions of the Supreme Court of the United States, says: "I have already shown, in the quotations from the United States Supreme Court decisions, exemption laws are based upon policy and humanity, and they do not impair, but are paramount to debts." (Garret vs. Cheshire, 69 N. C., 396; published also in 12 Amer., 647.)

A lien cannot exist where there is no power of sale. (Rorer on Judicial Sales, Sec 109, and cases cited.)

Lien is defined to be a hold or claim which one person has upon the property of another as a security for some debt or charge. (2 Bouv. Law Dic., 47.)

Lien carrying with it the power of sale, the only liens which can constitutionally bind the homestead are for taxes due and unpaid; obligations contracted for purchase of said premises, or for the erection of improvements thereon, or for house, field, or other labor performed on the same. (Const. of Fla., Art. 9.)

A homestead cannot be subject to forced sale for the payment of debts. (Stone vs. Darnell, 20 Texas, 11.)

A forced sale is one made under the process of the court, and in the mode prescribed by law. (Sampson & Keene vs. Williamson, 6 Texas, 102.)

In Texas, where the constitutional provision is somewhat similar to ours, it was held that an ordinary mortgage, properly executed both by the husband and wife, could not be foreclosed in court, or the property sold on judicial process, because such a sale would be a *forced sale.* (Sampson vs. Williamson, 6 Texas, 102.)

In no case, and under no circumstances, can the homestead be bound by a mortgage which needs to be enforced by foreclosure. * * * The prohibition of a *forced sale*

is absolute and complete. (Jourdan vs. Park, 38 Texas, 440.)

The distinction seems to be that parties (husband and wife) can only bind homestead by deed of trust, or mortgage with power to sell and convey without foreclosure. *Ib.*

The exemption need not be claimed, and the possession and use of property as a homestead are notice to the officers making a levy that it is held as such. (1 Central Law Journal, 65; Wilkerson vs. Wait, 44 Verm., 508; Wilkerson vs. Wait, 8 Amer., 391.)

The principle is well established by authority that whatever is enough to excite attention, or put a party on inquiry, is notice of everything to which the inquiry might have led. Sufficient information to lead to a fact shall be deemed sufficient to charge a party with knowledge of it. (Ploughboy, 1 Gall, 41; Hinds vs. Vattier, 1 McLain, 128; Wailes vs. Cooper, 24 Miss., 228; Parker vs. Foy & Florer, 43 Miss., 260.)

*H. Bisbee, Jr.*, for Appellee.

The question raised is: Can a man mortgage property which he represents not to be claimed as a homestead, and afterwards set up a homestead claim and defeat the mortgage security?

If the affirmative of this proposition can be maintained, it must result from some arbitrary statute law of the State. There is certainly no doubt that the common law favors a free and unrestricted right of alienation of real estate; indeed, a covenant or condition in restraint of alienation is void. It is undoubtedly true that there is no statute of the State prohibiting a man and his wife from conveying, in fee, real estate; and it must necessarily follow that if they can convey the fee, they can mortgage, whether the latter be considered as conveying the fee or as creating a lien.

If they convey in fee, how can it be claimed that the grantors can afterwards claim a homestead in the property; or, if they execute a mortgage upon a particular lot of land,

as in this case, upon what principle can they afterwards assert a homestead right in that particular lot to impair the contract of mortgage?

The Constitution and laws of the State, it is true, provide for a homestead which shall be exempt from *forced sale;* but when he executes a mortgage upon a certain lot of land, the law does not say that he can claim a homestead *in that lot* exempt from a forced sale.

Besides, it is *a part of the mortgage contract*, as fully as if set forth in the mortgage itself, that if the money loaned or secured by the mortgage is not paid, the holder of the mortgage shall enjoy the right of purchasing, and of having a decree for the sale of the premises. This is a part of the contract, and hence not a forced sale, but a sale by consent. (Bronson vs. Kinzie et al., 1 How., S. C., 318, 319.)

"*Forced Sale.*"—These words, in the case of Peterson vs. F. A. Hornblower, administrator estate of Henry Miller and Catherine Miller, a late case decided by the Supreme Court of California, have been defined: "They are *not synonymous* with sale on execution, but mean a sale against the will of the owner, and do not apply where the owner consents directly to the sale, or does so indirectly by consenting to or doing those acts or things that necessarily or usually eventuate in a sale, or a sale under a *power contained* in a mortgage or a decree of foreclosure."

The consent to a sale is in the mortgage contract, according to the authorities cited, and the California case sustained the mortgage *executed after* the declaration of homestead had been made.

If a man can mortgage, and then defeat the mortgage by asserting a homestead, he is simply clothed with power and license to *commit a fraud*, against which no vigilance could guard. If one had ten lots to-day, he could mortgage one, and, before the mortgage matured, sell the other nine and claim the mortgaged premises as a homestead.

No civilized State ought to countenance such a fraud,

nor permit the consequences of such a law upon the property of the people.

We submit that, in this case, the question is not, *can a man and wife mortgage a homestead?* but, can they execute a good security upon a parcel of land not claimed as a homestead, and then prevent the enforcement of the contract of mortgage by claiming a homestead?

A State cannot make a law impairing the obligation of a contract; yet, if the complainant's claim is sustained, a citizen of Florida can do what the State cannot: he can impair the obligation of a contract of mortgage *by his own act* of applying to a particular parcel of land a law of the State which, when he executed the mortgage, he asserted he did not apply to it. This is simply saying that, in Florida, the law authorizes a man to commit a fraud.

The plea not being replied to, of course all the facts stated in it are admitted by the complainant.

RANDALL, C. J., delivered the opinion of the court.

The complainant Michel filed his bill in the Circuit Court for Duval county, alleging that he is a citizen of this State, the head of a family entitled to hold a homestead. That he owns a lot in the incorporated city of Jacksonville, and occupies it with his family as a homestead, it being less than one-half an acre of land, and that the defendant, through and by the sheriff of Duval county, by virtue of legal process, is about to sell the lot, and has advertised it for sale. That the intended sale is not for taxes or for purchase money or for improvements or for labor on the same, wherefore he prays an injunction to prevent the sale.

A temporary injunction was allowed.

The defendant filed a plea alleging that in June, 1870, he loaned the appellant five hundred dollars, and took his promissory note therefor, secured by a mortgage upon the premises in question, the mortgage being in the usual form, duly executed and recorded. That in May, 1873, he com-

menced suit in equity to foreclose the mortgage; that Michel and his wife were duly served with the process of the court, and on the 26th day of August, 1874, a final decree of foreclosure and sale was duly entered and signed in the Circuit Court for Duval county, and that by virtue of said decree he was about to sell the property, this being the same matter of which the appellant complains in his bill.

The cause was set down for a hearing upon the bill and plea, and the court refused a permanent injunction and dismissed the bill, whereupon complainant appeals.

The question of the exemption of the mortgaged premises as a homestead under the Constitution and laws of this State, was the only question discussed by counsel for appellant.

We would cheerfully proceed to the decision of that question in this case if it were possible, but the law and the well established principles of judicial action forbid it.

The plea alleges that the mortgaged premises have been condemned to be sold to pay the mortgage debt; that the decree was made by a competent court having jurisdiction of the subject matter and of the parties, and thereby it was determined and adjudged by that court that the property was liable to be sold to pay that debt. This plea is not controverted, and the cause was heard as upon demurrer to the plea.

The question now presented is, whether the bill in this case can be maintained? whether the decree of foreclosure can be examined and reversed, set aside or enjoined upon the grounds alleged?

A bill of review and a bill in the nature of a bill of review, are the only bills which can be brought to affect or alter the decree, unless it has been obtained by fraud. (Daniel's Ch. Pl. and Pr., 4 Am. Ed., 582; 1 Fla., 455; 9 Fla., 325.)

The true office of this sort of bill as now used, is to bring before the court new matter discovered since publication

in the original cause when the decree has not been signed and enrolled.    (Story's Eq. Pl., Sec. 422.)

It seems to be a general rule that a supplemental bill for newly discovered matter should be filed as soon after the new matter is discovered as it reasonably may be.  If, therefore, the party proceeds to a decree in the original suit after the discovery of the facts upon which the new claim is founded, he will not be permitted afterwards to file a bill in the nature of a bill of review founded on these facts, for it was his own laches not to have brought them forward at an earlier stage.    Ib., § 423 *et seq.*, and authorities there cited; Miller vs. Sherry, 2 Wall, 373 ; Haynes vs. Meek, 14 Iowa, 320.

There being no fraud nor no new matter charged as the ground for relief, this bill is not a bill of review or in the nature of a bill of review, which we have seen are the only known methods of attacking a decree for the purpose of availing the party of matters of defence not already interposed, and which matters of defence must have come to his knowledge or possession since the decree.  Obviously the matters alleged in this bill were within the knowledge of the appellant at and before the commencement of the foreclosure suit, and there is no pretense of fraud or over-reaching on the part of the original complainant.

The Supreme Court of Texas, which has gone quite as far in the protection of the homestead from sale under mortgage foreclosure as any other court, if not a little farther, has said in respect to the conclusiveness of a judgment or decree :   " It is an elementary principle, which does not require the support of argument or authority, that the judgments of a court of competent jurisdiction are revisable only by an appellate court, and cannot be impeached collaterally. So long as the judgment remains in force, it is in itself evidence of the right of the plaintiff to the thing adjudged, and gives him a right to possess and execute the judgment. (Citing 10 Pet., 449.)   It is not necessary to the conclusive-

ness of the former judgment that issue should have been taken upon the precise point which it is proposed to controvert in the collateral action. It is sufficient if that point was essential to the former judgment. * * * That question, therefore, it was not competent for the defendant to bring again into litigation in this action, unless it had been proposed to impeach that judgment on the ground of fraud, which is not pretended or averred in respect to the judgment." (Lee vs. Kingsbury, 13 Texas R., 68.)

· "If the decision was erroneous, the defendant had his remedy by an appeal or writ of error to reverse the judgment. There is nothing in the nature of the right of homestead to exempt it from the operation of the general principle. * * * If the appellant had made the proof in the former case, which he has made in this, the court must have adjudged the question in his favor, or its judgment must have been reversed upon appeal to this court. If he neglected or failed to make the proof, the court could not do otherwise than render the judgment which was rendered in the case." (Tadlock vs. Eccles, 20 Texas R., 782.)

It is thus found that the court could not entertain this suit. There would be no end of litigation, and the right of property would never be safe if a different rule should be allowed to prevail.

The decree of the Circuit Court is affirmed.