## LOUIS ADLER v. SUPERIOR APARTMENTS CORPORATION

160 So. 868.
Division B.
Opinion Filed April 25, 1935.
Rehearing Denied June 4, 1935.

128

*John J. Lindsey,* for Appellant;

*Meyer & Lipton,* for Appellee.

ELLIS, P. J.—This case appears here for the third time. In this appeal an attack is made upon an order of the Chancellor dated December 5, 1933, striking the reply of Louis Adler to a rule to show cause why the Superior Apartments Corporation should not have a writ of assistance to place it in possession of a certain lot of land on which a building known as Windsor Apartments had been erected, of which the Superior Apartments Corporation had become the purchaser at a foreclosure sale held November 6, 1933, pursuant to a final decree of foreclosure in a case entitled Henry H. Taylor, as Receiver of The City Trust Company, v. Jacob Becker and wife, Isaac Gross and wife, Louis Baum and

wife, Hyman Bialik and Louis Adler, pending in the Circuit Court for Dade County.

The first appeal was from a decree of foreclosure. The decree was reversed because it appeared that negotiations to pay up all past due installments and reinstate the trust deed had proceeded to the point at which the amount due had been ascertained and tendered to complainant but refused by it. The amount, however, was paid into court. Testimony was taken and a final decree entered allowing trustee's fees in the sum of $453.34, and $2,000.00 attorney's fees. The Court held that the attorney's fees allowed were excessive; that no basis existed to support the allowance of fees for the trustee and that the appellants should have been permitted to pay up the amounts due and that the status of the trust deed be restored. See Becker v. City Trust Co., 102 Fla. 682, 136 South. Rep. 642.

Two years later an appeal was taken from an amended or new decree. During the pendency of the first appeal the Chancellor allowed the defendants to withdraw the amount deposited in the registry of the court. When the mandate reached the Circuit Court the Chancellor vacated the former decree and entered another requiring the payment of the exact amount previously tendered and withdrawn which represented the amount due under the trust deed and the bonds secured thereby including attorney's fees and costs.

The second appeal was taken from that decree. The appellants contended that when the mandate from the Supreme Court came down in the first appeal the Chancellor should have dismissed the bill. The Court decided against that contention and affirmed the decree. See Becker v. Taylor, 111 Fla. 731, 149 South. Rep. 591.

Upon the mandate in the second appeal being received,

the Special Master gave notice of the sale of the property, the payments required by the decree not having been made. At the appointed time the sale was made and the property purchased by the Superior Apartments Corporation. The price bid for the property was twenty-two thousand dollars. The purchaser tendered in payment thereof bonds of the face value of forty-four thousand seven hundred dollars secured by the trust deed, and the purchaser paid in cash the "costs, charges, fees and disbursements."

By order entered November 21, 1933, the Chancellor confirmed the Master's report of the sale and directed him to execute a deed to the Superior Apartments Corporation for the property.

The purchaser applied for a writ of assistance the following day. An order was made on the 23rd day of November granting the writ. The Chancellor treated the order as a rule to show cause why the premises should not be delivered to the purchaser.

Now, Louis Adler, who was a defendant in the litigation and against whom a decree *pro confesso* had been entered according to the admission of counsel interposed a reply or an answer to the rule to show cause, or the petition for the writ.

The mortgage, which was foreclosed, was executed by Jacob Becker and wife on September 25, 1925, to secure the payment of eighty-seven bonds, some of which were of the par value of one hundred dollars, some of five hundred dollars and others of one thousand dollars; the last series falling due in September, 1935.

Becker and wife, in April, 1926, conveyed the property to Isaac Gross and Louis Baum, who assumed and agreed to pay the Becker mortgage.

It is averred by Adler in his answer that in May, 1926, Gross and Baum, joined by their wives, executed a mortgage upon the premises to secure a debt of forty thousand dollars evidenced by fourteen promissory notes. The promissee named in the notes was Jacob Becker and the mortgage was executed to him.

In January, 1927, Becker transferred the notes to Hyman Bialik and assigned the mortgage to him also, who on the same day transferred the notes and mortgage to Louis Adler. In October, 1933, Isaac Gross and Louis Baum, who were the owners of the mortgaged premises, placed Louis Adler in possession of the property. That was two months after the affirmance by this Court of the second decree and three days after the Master's notice of sale was filed.

Now the answer sets up a conspiracy on the part of Becker, Gross and Baum to perpetrate a fraud upon Adler by a process of freezing him out of any benefit from the mortgage from Gross and Baum to Becker, who assigned it to Bialik, who in turn sold and transfered it to Adler.

The scheme, as averred, was as follows: Becker, who originally owned the property, mortgaged it for $50,000.00 to secure the eighty-seven bonds. Seven months after that transaction he conveyed the property to Gross and Baum. On the same day of that conveyance, April 29, 1926, they mortgaged the property to Becker to secure the payment of fourteen notes aggregating forty thousand dollars and assumed the payment of the Becker mortgage of fifty thousand dollars. Becker in January, 1927, transferred the notes and mortgage to Bialik, who on the same day transferred them to Adler.

Gross and Baum paid the bonds secured by the Becker mortgage up to May, 1929. Then Becker, Gross and Baum conceived the plan that Gross and Baum should default in

the payment of the bonds falling due subsequently to that date and thus discourage the holders of the bonds in their hope of collecting the same or any substantial part of them, thus precipitating a foreclosure of the trust deed or mortgage and extinguishing the lien of the mortgage held by Adler; that the scheme was followed and Gross and Baum refused to pay any more of the bonds as they became due; that while that plan was carried out for a while the conspirators disagreed among themselves, but Becker continued the plan to defraud Adler by organizing a corporation called the Superior Apartments Corporation; that the Corporation is merely the *alter ego* of Becker; that the purpose of it was to acquire the outstanding bonds of Becker at a small fraction of their face value to the end that he might escape his obligation upon them; that Becker did acquire the bonds at a small price and used them in paying the price of the property at the mortgage sale.

If the averments of the answer are true, then Becker, the original owner of the property gets ninety thousand dollars in cash (the proceeds of the fifty thousand dollar bond issue and the proceeds of the notes for forty thousand dollars which notes were secured by the second mortgage to Becker) and receives the property mortgaged by taking the title in a corporation averred to be merely the *alter ego* of Becker, for an outlay of whatever sum he paid for the forty-four thousand seven hundred dollars face value of his bonds and the costs, charges and fees incident to the foreclosure.

Motions to strike the return and to dismiss it were granted, although there was on file a reply by the Superior Apartments Corporation which was filed on the same day that the motions were interposed. The replication denies the material averments of the answer and makes counter

charges of fraudulent schemes concocted by Gross and Baum and Adler to retain possession of the property and appropriate the rents and profits from it to the Corporation's injury.

Considering the answer of Adler to the order to show cause why the writ of assistance should not issue as analogous to a bill to enjoin the enforcement of a judgment, the pleading styled a replication, which would be in the nature of an answer to the reply of Adler, the latter may be aided by the so-called replication in which counter charges of fraud are made. It is alleged that while Becker assigned the notes and mortgage executed by Gross and Baum as alleged, the consideration for the transfer was paid by Gross and Baum which paid their obligation to. Becker so that no valid claim exists on account of those notes and mortgage and that Adler therefore has no valid claim on account of the Gross and Baum mortgage and that Adler's possession of the property is in pursuance of a scheme entered into between him and Gross and Baum to retain possession as long as possible of the property and committing waste thereon without paying the indebtedness due against the same and thus committing a fraud upon the Superior Apartments Corporation. It is also alleged that Gross and Baum are solvent and that Adler is able to collect whatever claim he holds against them, if any.

In the case of Orange Belt Land Exchange, Inc., v. Speer, 100 Fla. 182, 129 South. Rep. 779, it was held that where a demurrer to a bill and an answer are on file at the same time the averments of the answer are binding upon the defendants for the purpose of determining the soundness of the demurrer.

Now the reply of Adler and the answer thereto of the Superior Apartments Corporation present such questions of

double dealing, insincerity and fraud existing between Becker, Gross, Baum and Adler relating to the property in question and their alleged rights thereto that equity should inquire into it and place the parties in the true position that justice and equity require.

Now the original bill of foreclosure in this case, while it made Louis Adler a nominal defendant, contained no allegations which required him to answer, nor does the decree require him to pay the alleged indebtedness due upon the mortgage foreclosure nor in any wise adjudge his rights to or liens upon the property, if any exist, by any direct order against him or his interests.

. While Adler is in possession of the premises by virtue of the consent of Gross and Baum, who were at the time the owners of the title to the property and the mortgagors under 'whom Adler claims and Gross and Baum were parties defendant to the bill to foreclose and are bound by the decree, and Adler's rights can rise no higher than those of the persons under whom he claims and may be said, therefore, to be bound by the decree against Gross and Baum, yet there exists the alleged fraud between Becker, Gross and Baum to destroy the mortgage lien held by Adler, in which fraudulent scheme Becker through his corporation, the Superior Apartments Corporation, is the sole 'beneficiary and such fraud did not come to the knowledge of Adler until after the entry of the final decree and the entry of the order confirming the Master's report of sale.

Now, if that is true, and it be contended that Adler as a nominal party to the bill to foreclose could nevertheless have answered the bill and set up the mortgage held by him as a secondary lien and could have tendered the money necessary to discharge the first mortgage lien or ask for appropriate relief as to the distribution of whatever sur-

plus proceeds might result from the sale of the property, yet the fact remains that the alleged fraudulent scheme of Becker, Gross and Baum in law results in nothing more than an extinguishment of the mortgage debt which Becker was originally bound to pay and which Gross and Baum had, also by agreement, become obligated to discharge. And Adler knew nothing of such fraudulent scheme until after the Master's sale and could not therefore have set it up in an answer in the original suit.

Undoubtedly the averments of Adler's answer to the writ of assistance could be made the basis of a bill of review and a prayer that the decree of confirmation of sale be suspended until the equities presented could be determined.

The above proposition is within the purview of Lord Bacon's first ordinance, the substance of which is that no decree shall be reversed, altered or explained, being once under the great seal, but upon bill of review and no bill of review shall be admitted except it contain error of law appearing in the body of the decree without further examination of matters of fact, or some new matter which has arisen in time after the decree and not any new proof which might have been used when the decree was made; "nevertheless, upon new matter, that has come to light after decree made, and could not possibly have been used at the time when the decree passed, a bill of review may be granted by the special license of the court and not otherwise." See Massie's Heirs v. Graham's Adm'rs. 3 McLean (U. S. Cir. Ct.) 41; 3 Ency. Pl. and Prac. 571, 574; 4 Stand. Ency. of Proc. 456; Story Eq. Pleading, Sec. 415; Hardwick v. Am. Can. Co., 115 Tenn. 393, 89 S. W. Rep. 735, 1 L. R. A. (N. S.) 1029.

In an opinion by Mr. Justice Baltzell in the case of Putnam v. Lewis, 1 Fla. 455, the rule was recognized although in that case the petition was denied because the decree was

not a final decree. The Court said that the decree being interlocutory, a supplemental bill in the nature of a bill of review would seem to be the appropriate remedy. Possibly an original bill might accomplish the object. "This, however, will be for the consideration of the Circuit Court." See Owens v. Love, 9 Fla. 325; Michel v. Sammis, 15 Fla. 308, Text 315.

Now as the rule is well established that a bill in the nature of a bill of review may be filed only by permission of the Chancellor to review an interlocutory decree, the answer of Adler should have been treated as an application for leave to file such a bill. It may be argued, however, that the order of confirmation of sale was a final decree and not an interlocutory one; in such case the bill in the nature of a bill of review is a continuation of the original suit, therefore permission to file such a bill would have been denied. If such is true a bill of review would lie on the facts averred.

In the case of Kurtz v. Kurtz, 112 Fla. 619, 150 South. Rep. 785, the court held that the Chancellor has no power *sua sponte* to annul a decree after period for granting rehearing has expired; that the remedy is by bill of review. See Hall v. Hall, 93 Fla. 709, 112 South. Rep. 622, in which case the Court approved the practice, upon denying a petition to open, review and vacate a decree of divorce rendered more than six months previously, of allowing the petitioner to file an original bill in the nature of a bill of review. The petitioner then filed an amended petition or bill of review upon the ground of newly discovered evidence.

Where the jurisdiction of the court has been wrongfully invoked and a final decree obtained upon false allegations of jurisdictional facts the defendant, being free from laches, may obtain relief by way of motion to vacate the final

decree. The reason being that the decree being valid on its face where there is nothing in the record to show otherwise is not void but voidable as where the facts showing lack of jurisdiction can only be established by matter dehors the record. See Bryant v. Bryant, 101 Fla. 170, 135 South. Rep. 635.

If the facts averred in Adler's petition be true, the decree in the case was obtained by fraud, as Becker, or his corporation, was entitled to no decree if what he is alleged to have done amounted to nothing more than the payment of his own indebtedness. He was the beneficiary in fact for whose benefit the foreclosure was obtained. He was or became the owner of the debt which the mortgage was given to secure and the principal obligor. If the averments are true then Becker merely sought a foreclosure against himself for a debt which he had paid by taking up the obligations on which he was principal obligor.

The alleged fraud revealed by the answer of Adler should have arrested the further execution of the decree and the Chancellor should have received evidence as to the truthfulness of the averments or arrested the execution of the decree, allowed the possession of the property to remain *in statu quo* and permitted Adler to file a bill of review.

In this view of the case, we think the Chancellor erred in dismissing the answer or reply to the writ to show cause why a writ of assistance should not lie.

Reversed.

TERRELL and BUFORD, J. J., concur.

WHITFIELD, C. J., and BROWN and DAVIS, J. J., concur in the opinion and judgment.